UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MANUEL PEREZ, JR.,<br>    Plaintiff, | *<br>*<br>* |
| v. | *   CIVIL ACTION NO. B-03-140 |
| | * |
| JOHN D. ASHCROFT, Attorney General<br> for the United States, and TOM RIDGE,<br>Secretary of the United States Department<br>of Homeland Security,<br>    Defendants. | *<br>*<br>*<br>*<br>*<br>* |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND ALTERNATIVE MOTION FOR SUMMARY JUDGEMENT**

Defendants herein have moved for a dismissal of Plaintiff's lawsuit on the ground that it fails to state a claim upon which relief can be granted. *See,* Rule 12(b)(6) of the FRCP. Alternatively, the Defendants have moved for summary judgement on the basis that they are entitled to judgement as a matter of law. *See,* Rule 56(b) of the FRCP. This memorandum and referenced exhibits are submitted in support of this motion.

1.  **Factual Background**

Plaintiff, Manuel Perez, began working as a Detention Officer for the Immigration and Naturalization Service - formerly an agency of the United States Department of Justice - in April 1988. See *Plaintiff's Complaint*, ¶ 6. In June of 1994, Plaintiff sustained injuries during a training exercise for which Plaintiff was placed on medical leave.[1] *Id.* at ¶ 8. The Plaintiff received a worker's compensation claim number and

---

[1] This incident should not be confused with another on the job injury Plaintiff received in 1991. Plaintiff was guarding aliens on a Continental Airlines flight out of Harlingen, Texas. During the course of the flight, heavy turbulence was encountered resulting in Plaintiff being injured. As a result of the injuries sustained in this 1991 incident, Plaintiff had been assigned to light duty status at the time of the 1994 training incident referenced in Plaintiff's complaint. See Defendants' Exhibit C.

authorization for an examination by agency physicians approximately thirty days following his injury.  *See Defendants' Exhibits A and B.*

In August 1996, the Plaintiff went on "Leave Without Pay Status" (LWOP) because he was unable to "perform any of his duties at all due to the increased severity of his pain."  *Defendants' Exhibit F at p. 4.*

In October 1996, the Plaintiff attempted to return to work claiming that his doctor said he could "work on light duty status." *Plaintiff's Complaint, ¶ 9.*  Administrative Officer, Jan Hernandez, however, advised Plaintiff that the medical documentation he submitted did not provide sufficient information for which defendants could determine a "light duty" status position. *Defendants' Exhibits D at p. 3 and F at p. 4.*

In particular, Administrative Officer Hernandez indicated that the agency needed the Plaintiff's doctor to provide: (1) his diagnosis, (2) his plan of treatment, (3) his prognosis concerning the Plaintiff's condition, and (4) and statement that described the restrictions or limitations in connection with the patient's work (i.e. patient can not lift items more than twenty pounds for at least three weeks; patient should not be required to stand more than "X" amount of minutes at a time without a break; etc.). *Defendants' Exhibit D at p. 3*

Although Plaintiff forwarded copies of various medical reports from his different treating physicians, it was not until March of 2000, that Plaintiff finally submitted the medical reports that provided the information requested by the Defendants. *Defendants' Exhibits D and E.*   Accordingly, upon receipt of this medical documentation, Plaintiff was allowed to return to work in a "light duty status" position in March 2000.  *Id.*

However, in October 2001, Plaintiff was informed by his supervisor that he was going to be re-assigned to another light duty status job at the Port Isabel facility. *Defendants' Exhibit G at pp. 2-3.* Plaintiff indicated that he believed the position to be too strenuous on his back and he refused to go to his new assignment. Instead, Plaintiff demanded that he be allowed to work a different position. *Defendants' Exhibit G.* Plaintiff's supervisor's refused; Plaintiff resigned after he was advised by supervisors that he would not be authorized leave if he left work early. *Id.*

2.  **Procedural Background**

In January 2000, Plaintiff filed a Formal Complaint of Discrimination (Formal Complaint) alleging that he had been the victim of discrimination on the basis of a physical disability. In his Formal Complaint, Plaintiff alleged that the Defendants discriminated against him by: (1) not giving him regularly scheduled within grade step increases; (2) by not allowing him to return to work in a light duty status between October 1996 and March 2000; and (3) failing to properly process Plaintiff's Worker Compensation Programs claims and related documentation. *Defendants' Exhibit H; see also, Defendants' Exs. A and B.*

On February 6, 2002, the agency issued a "Final Agency Decision" (FAD) finding no discrimination. *Defendants' Exhibit B.* Plaintiff timely appealed that decision to the Equal Employment Opportunity Commission (EEOC), Office of Federal Operations (OFO). On May 6, 2003, the OFO affirmed the agency's FAD concluding that there was no discrimination against the Plaintiff. *Defendants' Exhibit A.* Plaintiff then filed the instant lawsuit on August 11, 2003, seeking, *inter alia*, that he be placed back in his job as a Detention Officer in light duty status. *See Plaintiff's Complaint, ¶ 21.*

Interestingly, while Plaintiff's Formal Complaint for discrimination proceeded through the process of review, Plaintiff made an informal discrimination complaint against the Defendants in July of 2002[2]. Plaintiff filed this informal complaint several months after he quit his job with the Defendants. According to available documentation relating to this informal complaint, Plaintiff indicated that he "[w]ant[ed] [his] job back with reasonable accommodations and with back pay." Defendants' Exhibit *I* at p. 5. A mediation was held regarding Plaintiff's informal complaint of discrimination on September 13, 2002, at which time a settlement was reached. *Id.* at pp. 1-2.

In this Settlement Agreement, Plaintiff stated that he "agrees to waive his/her right to pursue administrative or judicial action in any forum concerning the matters raised in the complaint(s) at issue and that these will not be made the subject of future litigation." *Id.*

3.  **Argument**

    A.  **The Matters in Controversy in this Case have been addressed and resolved by the Settlement Agreement executed by the parties on September 13, 2002.**

Plaintiff has already accepted a settlement in exchange for the dismissal of his claims under the Rehabilitation Act; therefore, this lawsuit should be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) of the FRCP.

Defendants are cognizant that motions to dismiss are viewed with disfavor by the

---

[2] Actually, the informal complaint was made against the United States Department of Justice, Immigration and Naturalization Service (INS). The functions of the INS were transferred into the Department of Homeland Security, effective March 1, 2003, as authorized by the Homeland Security Act, Pub. L. 107-296, Nov. 25, 2002, 116 Stat. 2135, codified at 6 U.S.C. 101 *et seq*.

Courts. *Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 [5th Cir. 1988]).

However, the purpose underlying a Rule 12(b)(6) motion is to test the legal sufficiency of the Plaintiff's claim; not the facts that support it. *Nevarez v. United States*, 957 F.Supp. 884, 889 (W.D. Tex 1997). Accordingly, even assuming that all the facts set forth in the Plaintiff's Complaint are true, the Court may not dismiss Plaintiff's complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41 [1957]).

In the case at bar, Plaintiff filed two separate complaints of discrimination stating that Defendants' alleged refusal to accommodate the Plaintiff's disability warranted a finding of discrimination. The first complaint–which was investigated and processed as a Formal Complaint - was filed on January 5, 2000. *See Defendants' Ex. H*. In his Formal Complaint, Plaintiff alleged that "he has been discriminated against due to a physical disability" and that the Defendants "failed to make reasonable job accommodations or compensate him for his injury." *Id.*

On July 16, 2002, Plaintiff lodged his informal complaint also alleging failure to reasonably accommodate a physical disability. *Defendants' Exhibit I*. Notably, this informal complaint was filed four months following the issuance of the FAD finding "no discrimination" relating to his Formal Complaint. Plaintiff timely appealed the FAD and that appeal was pending with the OFO at the time he filed his informal complaint

against the Defendants.

However, on September 13, 2002, eight months before the OFO came out with its decision on Plaintiff's appeal, Plaintiff secured a settlement of his discrimination claims.

As indicated at Defendants' Exhibit I, Plaintiff was allowed to take disability retirement in exchange for the release of all claims relating to the agency's alleged failure to reasonably accommodate a physical disability. In the Settlement Agreement, Plaintiff "releases and forever discharges the United States Department of Justice, the Immigration and Naturalization Service and its agents for liability related to the allegations in this complaint." Plaintiff further agreed "to waive [his] right to pursue administrative or judicial action in any forum concerning the matters raised in the complaint(s) at issue and that these matters will not be made the subject of future litigation." *Id.*

Yet, Plaintiff chose to file the present suit in August 2003 after he received the OFO's May 6, 2003, decision upholding the February 2002 FAD finding.[3] Quite frankly, Plaintiff is seeking to have two bites of the apple, where he is only entitled to one. Plaintiff has settled his complaint of discrimination; therefore, this lawsuit should be dismissed for failure to state a claim upon which relief can be granted.

> **B.** **Plaintiff, as a matter of law, has failed to sustain a claim of discrimination against the Defendants when it is clear from the record herein that Defendants actions were clearly supported by a**

---

[3] It is not known whether the OFO was notified of the September 13, 2002, Settlement Agreement prior to rendering its decision. It is speculated that in addition to dealing with a normally high volume of paperwork, this process of review was hindered by the March 1, 2003 transfer of INS functions from the Department of Justice to the Department of Homeland Security.

**non-discriminatory intent.**

(1) <u>Summary Judgement Standard</u>

In *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464-465 (5th Cir. 1999), the Fifth Circuit described the summary judgement standard as follows:

> **Summary judgement is proper when the pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, demonstrate that no genuine issue exists as to any material fact and that the movant is entitled to judgement or partial judgement as a matter of law. Fed.R.Civ.P. 56(c);** *Burns v. Harris County Bail Bond Bd.,* **139 F.3d 513, 517-18 (5th Cir.1998).**
>
> **The party seeking summary judgement has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact.** *Johnston v. City of Houston, Tex.*, **14 F.3d 1056, 1060 (5th Cir.1994) (citing** *Celotex Corp. v. Catrett*, **477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 [1986]). If the moving party carries its initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of material fact. "This showing requires more than 'some metaphysical doubt as to the material facts.' " Id. (quoting** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 584-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 [1986]). While the party opposing the motion may use proof filed by the movant to satisfy its burden, " 'only evidence--not argument, not facts in the complaint--will satisfy' " the burden. Id. (**quoting *Solo Serve Corp. v. Westowne Assoc.,* **929 F.2d 160, 164 [5th Cir.1991]).**

See also, *Priester v. Lowndes County,* 354 F. 3d 414 (5th Cir. 2004).

(2)   <u>Rehabilitation Act Overview</u>

The Rehabilitation Act is the exclusive remedy for federal employees alleging claims of disability discrimination. *29 U.S.C. § 701, et seq.* In the case at bar, Plaintiff claims that Defendants discriminated against him because they did not provide reasonable accommodation for his disability. The Rehabilitation Act, though very similar in many respects to the Americans with Disability Act (ADA), differs from the ADA in that it requires that the Plaintiff show that the discrimination was "solely by

reason of his [ ] disability." *Soledad v. U.S. Dept. Of Treasury,* 304 F. 3d 500, 504 (5th Cir. 2002).

The Rehabilitation Act requires an employer to provide reasonable accommodation for a disabled employee. *Prewitt v. U.S. Postal Service*, 662 F.2d 292, 307 (5th Cir. 1981). As part of a failure to accommodate claim, the Plaintiff must prove the following elements: (1) that he is an individual who has a disability within the meaning of the ADA, (2) the Defendant has notice of his disability, (3) with a reasonable accommodation he could perform the essential functions of the position sought, and (4) the employer has refused to make such accommodations. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997); *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002); *Taylor v. Phoenixville School District*, 174 F.3d 142, 165 (3d Cir. 1999); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-1047 (6th Cir. 1998).

As such, the Plaintiff retains the ultimate burden of persuasion to prove his claim. As part of his proof, the Plaintiff must come forward with evidence sufficient to make a facial showing that an accommodation is plausible. At that point, the burden shifts to the Defendant to present evidence of its inability to accommodate. See *Mason v. Frank*, 32 F.3d 315, 318 (8th Cir. 1994). If the Defendant presents such evidence, the Plaintiff has the burden of presenting evidence "concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *White v. York Int'l. Corp.*, 45 F.3d 357, 361 (10th Cir. 1995) (quoting *Prewitt v. United States Postal Service,* 662 F.2d 292, 308 (5th Cir. 1981).

(3) <u>The Rehabilitation Act as Applied to the Issues at Bar</u>

Defendants do not dispute that Plaintiff had a disability as defined under the

Rehabilitation Act. In addition, Defendants do not dispute that they were on notice that Plaintiff had a disability or that Plaintiff requested a light duty assignment in October 1996. And finally, Defendants do not dispute that they denied Plaintiff's request to return to work in October 1996 at a light duty assignment.

This decision, however, was not based on any discriminatory motive against the Plaintiff. Rather, this decision was made based upon the information documenting the Plaintiff's current medical status and physical capabilities that would allow him to safely perform his duties.

Clearly, an employer must have such information in order to make a determination of how it may accommodate the disabled person in a manner that also attends to the needs and functions of the job for which that individual was hired. *See, Loulseged v. Akzo Nobel, Inc.,* 178 F.3d 731, 736 (5th Cir. 1999). The ADA provides some guidance on this point by specifically giving deference to an employer in assessing the essential functions of a position. As the statute states:

> **For the purpose of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job. 42 U.S.C. § 12111(8).**

See also, *Defendant's Exhibit J.*

Therefore, part of the Plaintiff's burden in identifying reasonable accommodation includes showing that the accommodation would "effectively enable [plaintiff] to perform [his] job." *Reed v. Lepage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001).

In the case at bar, Defendants, in accordance with agency policy, asked Plaintiff to produce "necessary medical documentation" that provided "the nature of the injury,

the results of examination by proper medical authorities, prognosis, any resulting job limitations, and the like." *See Defendants' Exhibit D.* This information is important for the defendants to have in order to determine what form of accommodation would be needed. Regardless of the large volume of documents Plaintiff produced from 1996 to March 2000, examination of these documents clearly indicate that these factors were never clearly set forth until March of 2000. See *Defendant's Exhibit E.* Moreover, it appears that Plaintiff concedes this point when he stated:

> **On August 26, 1997, Dr. Sweeney requested OWCP approval to perform right shoulder surgery; OWCP did not approve the surgery until June 9, 1998. On November 3, 1998, Dr. Tijerina requested OWCP approval to perform post-surgery MRI for the purpose of evaluating me for duty status; OWCP did not approve request until August 1999, the same month in which MRI was finally performed. After necessary visits to and consultations with physicians, I was finally evaluated March 2000, and as a result,** *finally cleared to return to work* **in a limited duty status.**

See *Defendants' Exhibit F at p. 10* (Emphasis added). This statement is confirmed by the fact that in March 2000, Plaintiff was finally able to provide defendants with complete documentation from his physicians that defined not only the extent of his injury, the treatment plan, and prognosis for recovery, but also set forth physical limitations and restrictions that should be observed when determining reasonable accommodation. See *Defendants' Exhibit E.*

"The determination of a reasonable accommodation is a cooperative process in which both the employer and the employee must make reasonable efforts and exercise good faith." *Feliberty v. Kemper Corp.*, 98 F.3d 274, 280 (7th Cir. 1996). In the case at bar, the defendants responded to Plaintiff's request and advised him in October 1996 that he did not have sufficient medical documentation for defendants to comply with his request for light duty. It became the Plaintiff's burden to present documentation

supporting his request.

Defendants should not be held responsible for failing to accommodate Plaintiff's request for light duty from October 1996 to March 2000, when Plaintiff–by his own admission–did not have or provide the medical documentation necessary to allow defendants to accommodate his disability.

4. **Conclusion**

Plaintiff's lawsuit should be dismissed because his claims were previously settled when he successfully settled his informal discrimination complaint.

Even if the Court were to find that the Settlement Agreement does not apply to the claims in this lawsuit, Defendants are entitled to judgement as a matter of law. Plaintiff cannot sustain his burden of proof that Defendants' actions were based upon a discriminatory motive. Rather, the evidence clearly demonstrates that Plaintiff did not provide Defendants sufficient information to provide a "light duty" assignment. Accordingly, judgement should be rendered in favor of the Defendants.

Respectfully submitted,

MICHAEL T. SHELBY
UNITED STATES ATTORNEY

/s/ *Nancy L. Masso*
NANCY L. MASSO
Assistant United States Attorney
600 E. Harrison St., No. 201
Brownsville, Texas 78520
Tel: (956) 548-2554
Fax: (956) 548-2549
State Bar No. 00800490
Federal I.D. No. 10263

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the true and foregoing copy of "Defendants Memorandum in Support of Their Motion to Dismiss Pursuant to Rule 12(b)(6) of the FRCP and Alternative Motion for Summary Judgement" and corresponding exhibits referenced therein, were mailed, via certified mail, return receipt requested, on **January 3, 2005,** to Plaintiff's attorney, Mr. T. Mark Blakemore, Attorney at Law, 835 E. Levee St., 6th Floor, Brownsville, Texas 78520

                                                    /s/ *Nancy L. Masso*
                                                    NANCY L. MASSO