

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, D.C. 20036**

RECEIVED EEO STAFF/JMD 2003 MAY 16 PM 2:24

Manuel Perez,
Complainant,

v.

John Ashcroft,
Attorney General,
Department of Justice,
(Immigration and Naturalization Service),
Agency.

RECEIVED - INS - EEO 03 MAY 20 AM 7:09

Appeal No. 01A22250

Agency No. 187-4-1555

DECISION

Complainant timely initiated an appeal from a final agency decision (FAD) concerning his complaint of unlawful employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 *et seq*. The appeal is accepted pursuant to 29 C.F.R. § 1614.405. For the following reasons, the Commission AFFIRMS the agency's FAD.

The record reveals that during the relevant time, complainant was employed as a GS-7 Immigration Detention Enforcement Officer at the agency's Port Isabel Service Processing Center, Los Fresnos, Texas ("facility"). Complainant sought EEO counseling and subsequently filed a formal complaint on January 5, 2000, alleging that he was discriminated against on the basis of disability (injuries to neck, right arm, right shoulder and back) when: (1) after suffering an on-the-job injury, he has not received regularly scheduled Within-Grade Step Increases since June 15, 1994; (2) between October 29, 1996 and March 23, 2000, the agency did not allow complainant to return to work in a limited or light-duty capacity; and (3) since August 6, 1998, agency officials have failed to properly process his Office of Workers Compensation (OWCP) disability compensation claim forms and related documentation.

The record reveals that complainant suffered an on-the-job injury on June 15, 1994 during a training session, and that he received a workers compensation claim number thirty days later, as well as authorization for an examination by agency physicians. Complainant's primary physician suggested that complainant be placed in a limited duty status. The record reflects that management

management at the facility provided him with duties which were less strenuous for a period that lasted until August 1996. At the end of his limited duty status period, complainant went on leave without pay (LWOP) status until October 1996, as he could not perform any duties at all due to the increased severity of his pain. Complainant stated that when he attempted to return to work in October 1996, the facility's Administrative Officer (AO) told him that the only way he could receive his salary would be to return to his usual position in normal duty status. He stated that since he did not have medical authorization to return to his normal position, he spent the period from October 1996 through March 2000 in non-duty status with no salary. Further, complainant stated that the agency failed to provide him with compensation for the injury which caused his disability.

At the conclusion of the investigation, complainant was informed of his right to request a hearing before an EEOC Administrative Judge or alternatively, to receive a final decision by the agency. Complainant requested that the agency issue a FAD.

In its FAD, the agency considered complainant's claim under the Rehabilitation Act and concluded that he is an individual with a disability. In so finding, the FAD noted that complainant asserted that he is physically disabled due to his on-the-job injury and that his injury substantially limits his ability to perform major life activities such as walking, sleeping and handling anything weighing more than fifteen pounds. FAD at 5. The FAD then considered whether complainant was a qualified individual with a disability under the Rehabilitation Act. The FAD noted that the record indicated that complainant was unable to perform the essential functions of his usual position without an accommodation, due to severe pain. FAD at 5-6.

Turning to the issue of reasonable accommodation, the FAD found that agency management allowed complainant to work in a light duty capacity until October 1996, and then refused to allow him to work when he failed to provide additional medical documentation that was necessary to determine whether he could be reasonably accommodated in a light duty capacity after October 1996. FAD at 7-14. The FAD noted the record contains evidence from the AO demonstrating that management continuously requested updated medical documentation from complainant regarding his medical condition. However, the FAD found that none of the medical evidence submitted by complainant sufficiently explained to facility management what his current prognosis was or his ability to perform the essential functions of his position. FAD at 13; Investigative Report (IR), at Exhibit 14. As a result, the FAD found that the agency did not discriminate against complainant due to his disability when he was not allowed to return to work in any capacity between October 1996 and March 2000.

Next, addressing complainant's claim regarding his failure to receive step increases, the agency noted the statement of the AO that the agency granted complainant his regularly scheduled step increases after his injury in June 1994, but once complainant went into a non-duty status from October 1996 through March 2000, the increases stopped. FAD at 15. The AO stated that an employee must be in some duty status, even a light duty status, to be eligible for step increases. *Id.* The FAD found that it was reasonable for the agency to withhold complainant's grade

increases while he was in a non-duty status, although the record did not contain a specific federal regulation granting agencies the authority to so do. The FAD concluded that the record did not contain evidence indicating that management's decision to withhold complainant's step increases while he was in a non-duty status was based on discriminatory animus.

Addressing complainant's allegation regarding his OWCP claims, the FAD found that the record showed no evidence that management was motivated by discriminatory animus. The FAD found that the evidence showed that facility management requested updates from complainant on his medical status during his non-duty period, and the record demonstrates that it was complainant's responsibility to provide the requested information to management as well as to OWCP. FAD at 17. The FAD concluded that complainant's failure to timely submit the required medical documentation to the OWCP officials appeared to be the reason for any delay in his OWCP claims. As complainant failed to rebut the evidence that he was responsible for failing to submit the requested documentation to facility management and to OWCP such that he could receive payments from OWCP in a timely manner, the FAD found that complainant failed to demonstrate discrimination as to this issue. FAD at 20. Complainant has made no contentions on appeal.

After consideration of the record, the Commission finds that even assuming, *arguendo*, that complainant was an individual with a disability under the Rehabilitation Act, we agree with the FAD's findings that the agency did not discriminate against complainant due to his disability. Regarding complainant's issue (2), the Commission finds that the record indicates that complainant did not submit any medical documentation during the period he was placed in a non-work status. The facility's AO stated that she received documentation from complainant's physician in late October 1996, stating that complainant could work in a light-duty capacity. IR, at Exhibit 8. However, the AO stated that the information she received was insufficient to cover complainant's work status for a period after October of 1996, so she informed him that he could not return to work without further information from his physician. *Id.* The agency's District Director also stated that complainant did not submit the required medical documentation after October 1996, and that complainant's disability had nothing to do with the decision not to allow him to return to work. IR, at Exhibit 9. In addition, we note that the record contains records of letters from one of complainant's physicians from 1997 stating that complainant was unable to return to work until further notice awaiting approval for surgery. IR, at Exhibit 14. During this time, complainant requested and was granted LWOP, which was extended until October of 1999. However, the LWOP status was denied when complainant sought an extension until October of 2000, as his physician stated that he could not return to work until further notice, and as there were several available light duty positions he could have performed. IR, at Exhibit 14, page 39.

After a review of the record, the Commission further finds that the agency did not refuse to provide complainant with a reasonable accommodation or discriminate against him due to his disability when it did not allow him to work in a light or limited duty capacity. Based on the statements of the AO and District Director, the record shows that facility management repeatedly asked complainant to provide medical documentation regarding his ability to return to work, but

of his usual position or a light/limited duty position. IR at Exhibit 14. We agree with the FAD's finding that most of the information submitted by complainant simply stated that he was unable to return to work for various periods, without any further explanation on the status of his disability. *Id.* As stated by the AO, the record establishes that none of the evidence submitted by complainant or his physicians during the period of 1996 through 2000 was sufficient to determine complainant's work status or duty limitations, and thus management was unable to determine which positions, if any, complainant was able to perform.

The Commission also agrees with the FAD's finding that once complainant was placed in a no-work status, it was not required to provide him with regularly scheduled within-grade step increases. The agency's District Director stated that agency employees who are not in a duty status are not eligible to have their salary increased through step increases. IR, at Exhibit 9. In addition, we find that complainant has failed to present evidence which would rebut the agency's articulated reasons for its failure to provide step increases for complainant when he was not working. Finally, the Commission agrees with the FAD's finding that the record contains no evidence that agency management discriminated against complainant due to his disability in their handling of his OWCP claim. The record indicates that it was the responsibility of complainant to initiate processing of his OWCP claim, and to submit appropriate documentation to agency management as well as to OWCP. However, we find that there are numerous instances in which complainant failed to timely submit documentation to OWCP, which is the reason for the delay in the processing of his OWCP claim. IR at Exhibits 9, 14. Therefore, after a careful review of the record, and arguments and evidence not specifically addressed in this decision, we affirm the FAD.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the

Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to

file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden

Carlton M. Hadden, Director
Office of Federal Operations

MAY 0 6 2003
Date

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:**

MAY 0 6 2003
Date

Equal Opportunity Assistant