# AFFIDAVIT

STATE OF __TEXAS__

COUNTY OF __CAMERON__

I, __MANuel PEREZ JR.__, __Hispanic, US Citizen, Male, 45, 9-26-55, physic__
(Affiant's Name) (Affiant's Race, Color, National Origin, Sex, Age, DOB, Religion, Disability)

__Detention Enforcement Officer  GS.1802-7__
(Job Title, Series and Grade,)
__R+3 Box 341 Los Fresnos Texas 78566   1-956-547-1700__
(Organization's Address, Telephone Number)

make the following statement freely and voluntarily to: **RICHARD SIDA**, who has identified himself to me as a Contract Investigator for the U.S. Department of Justice, investigating a complaint of discrimination filed by __Manuel Perez Jr__. Knowing that this statement may be used in evidence, I understand that this statement is not confidential and may be shown to any interested party who has a legal right to know.

I hereby solemnly __AFFIRM__:
(Swear or Affirm)

PAGE __/__ OF __12__ PAGES                                        INITIALS __WB__

# AFFIDAVIT

My name is Manuel Perez, Jr. I am an Immigration Detention Enforcement Officer, GS-1802-07, assigned to the U. S. Immigration and Naturalization Service, Harlingen District, Port Isabel Service Processing Center, Los Fresnos, Texas. I have been in my current position about six years. My supervisory chain of command for the position begins with the Supervisory Detention Enforcement Officer, GS-1802-09; Assistant Chief/Chief Detention Enforcement Officer, GS-1802-11; Camp Director, GS-1802-12; Harlingen Deputy District Director, GS-1801-13; and Harlingen District Director, GS-1801-14.

I have a physical disability, for which I have medical documentation from several physicians to support it. I sustained this disability due to an on-the-job injury which occurred June 15, 1994. The injury was to my neck, right shoulder, right arm, and back. I reported my injury immediately (no later than twenty-four hours after the incident) to my first-line supervisor at the time, George Gonzalez, the supervisory chief detention enforcement officer. Mr. Gonzalez at that time was also my unit's training officer, and was present at the time of the injury. I sustained my injury during a training session on defensive tactics. The training session was taped, and my injury is on the tape. The person who videotaped the session, I believe, was a lady named Yvonne, but unfortunately, I understand that the tape is nowhere to be found. Mr. Gonzalez endorsed my injury claim

Page 2 of 12 Pages　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____ Initials

# AFFIDAVIT

as a witness, and submitted the claim through proper channels, because I received a worker's compensation claim number within thirty days, plus authorization for an examination by agency physicians. The agency physicians (Kessler and Sermas) diagnosed injury to my back, neck, right shoulder, and right hand, and recommended an EMG, which was done April, 1996. Both agency physicians examined me again May, 1996, and discussed the EMG results with me and informed me that the EMG had revealed no abnormalities. Dr. Kessler added that since he is a hand specialist, that a shoulder specialist should examine me to determine the full extent of my injury as it affected my shoulder. I then saw Dr. Rivas June, 1996, and he recommended physical therapy for my shoulder, which I received from June through August, 1996. My primary physician (Dr. Rivas) had examined me five days after my injury (June 20, 1994), and diagnosed problems with my right elbow. My second physician (orthopedist Gregory S. Goldsmith) examined me August 29, 1994, diagnosed problems with my right shoulder and right elbow, and recommended physical therapy, which I went through for approximately two months. Another physician who examined me April, 1995, neurologist Humberto Tijerina, diagnosed me with spinal abnormalities and requested another EMG be done by the agency, because he believed that the injury to my shoulder was aggravating a previous injury to my spine. Still another physician, William Snyder, requested an EMG October,

Page _3_ of _12_ Pages                                        m⅞— Initials

# AFFIDAVIT

1996. Dr. Rivas informed the agency that I should be placed in a limited duty status, and later that I should continue in that status, while referring me to an orthopedist for further evaluation and diagnosis. The orthopedist, Dr. Goldsmith, subsequently notified my agency that I should be continued in a limited duty status. The agency provided me with duties which were less stressful and strenuous, for a period which lasted until August, 1996. The agency did not provide any particular accommodations for the performance of these duties; however, I did not request anything in addition to that recommended by the doctors. At the end of my limited duty status period August, 1996, I went into a leave-without-pay status until October, 1996, because I could not perform any duties at all, due to the increased severity of my pain. When I attempted to return to work at the end of October, 1996, Jan Hernandez, the Harlingen District Administrative Officer, informed me that the only way in which the agency would continue having me receive my salary would be for me to return to my regular position in the normal duty status. Since I did not have medical authorization to return to normal duty status at the time, I subsequently spent the period from October, 1996 to March, 2000 in a complete non-duty status with no salary or benefits whatsoever. During that time I resorted to money from my mutual fund investment account on which to live, because among other reasons, the agency to date has failed to provide me with compensation from the injury that caused my disability. The

Page 4 of 12 Pages                                              _MB_ Initials

# AFFIDAVIT

management officials I hold responsible for my non-duty status for the period in question, for the ineffective manner in which my injury report was handled, and for the resulting non-payment of compensation for my injury, are George Gonzalez (already identified), Jan Hernandez (already identified), and E. M. Trominski, the Harlingen district director. Please refer to Exhibit Three of my complaint case file for amplification of this chronological list of occurrences surrounding my injury and subsequent events.

My disability substantially limits my ability to perform major life activities such as prolonged walking, sleeping soundly at night, and handling anything weighing more than fifteen pounds. My disability limits my ability to perform these activities because of the pain which is so severe and constant. I have medical evidence to support the severity of my disability and the degree to which these activities are affected.

I believe I was discriminated against because of my disability resulting from my on-the-job injury, as evidenced by the shoddy manner in which the agency treated me from August, 1996 to the present; the conduct of the agency on October, 1996, wherein I was informed that I would have to return to a full-duty status in order to receive my salary, when the agency knew full well that my physicians were still evaluating and diagnosing my disability, with sustained recommendations to keep me in a limited duty status; by the manner in which Mr. Trominski misrepresented the facts of my case to Congressman

Page _5_ of _12_ Pages                                         MB — Initials

## AFFIDAVIT

Solomon Ortiz, twisting details in order to make it appear that the agency was properly handling the matter; by the fact that the agency treated another employee (Guillermo Carmona) with a very similar disability sustained also from an on-the-job injury in a much better fashion, providing proper and expeditious processing of all applicable documents and overall better consideration (including the providing of a nurse at his home during recovery); and in general, by the manner in which the agency's management officials handled my file and further misrepresented the facts of my case, giving me the impression that they were representing my best interests, which turned out not to be the case.

    I believe that since June 15, 1994 and subsequent to suffering my on-the-job injury, the agency's denial of my regularly scheduled within-grade step increases has been due to my disability. I believe this for the same reasons stated above, pertaining to my overall duty status. I hold responsible the same management officials listed above. I have never been informed of the denial of any of my step increases, and have never been counseled about my work performance as it pertains to the increases.

    The essential functions of my job are to enforce U. S. immigration laws by properly, safely, and humanely detaining illegal aliens during the processing stage for the eventual deportation of the aliens to their home countries. In addition, I believe that the agency's refusal to allow me to return to work in a limited or light-duty status between October 29,

Page _6_ of _12_ Pages                                  _____ Initials

**Exhibit F**
**Page 6 of 13**

## AFFIDAVIT

1996 and July 14, 1998 (date of surgery to my right shoulder) was based on my disability, for the same reasons already stated. From July 14, 1998 to March 23, 2000 I was in a no-duty status, recuperating from surgery, going through physical therapy, and awaiting Office of Workers' Compensation Program (OWCP) approval for an MRI. No one from the agency informed me as to why the agency would not continue me in any duty status (other than full duty status) after October, 1996. I have sufficient medical evidence to have justified a limited duty status after October, 1996, as already explained, and have, from the very beginning, provided the agency with medical documentation supporting my continued limited duty status beyond October, 1996. Additionally, this evidence proves that I cannot perform the essential functions of my regular position without some proper accommodations. I blame the same management officials already identified.

I believe that the alleged failure of agency officials to properly process my OWCP disability compensation claim forms and related documents, is based on my disability, for the same reasons already stated. As I have stated, I timely completed my portions of the required agency documents after my injury, and submitted them to Mr. Gonzalez, my first-line supervisor, for continued processing and forwarding to higher channels. For example, I completed form CA-7 (Claim for Compensation on Account of Traumatic Injury) August 7, 1996, to cover the period August 1, 1996 to August 27, 1996. I saw Dr. Rivas on August

Page 7 of 12 Pages                                                    _____ Initials

## AFFIDAVIT

13, 1996; he then completed his portion of the CA-7, diagnosing cervical sprain, shoulder sprain, and strained neck pain, and referred me to Dr. Snyder (already identified). I hand-carried my CA-7 to Mrs. Hernandez the same day Dr. Rivas examined me – August 13, 1996 – for processing by the agency. Dr. Snyder diagnosed on October 1, 1996 DJD of the AC joint, and referred me to Dr. Ruy Mireles, a neurologist, for an EMG (which, as previously explained, was never authorized by OWCP because of the alleged agency delays to which I have alluded). I saw Dr. Mireles October 8, 1996, and he diagnosed right shoulder and neck pain. I completed another CA-7 July 13, 1998; Dr. Sweeney (already identified) completed his portion that same month, diagnosing right shoulder impingement, cervical sprain, arm pain, and rotator cup tear. On September 1, 1998 I received a letter from OWCP, dated August 6, 1998, faxed to me in response to a telephone inquiry I had made that date. This letter explained that the agency had failed to complete its portion of my second claim (dated August 7, 1998), that provides medical information and documentation to support my claim. I had provided this information and documentation to the agency when I had submitted the claim in question, but according to Mrs. Hernandez (already identified), the agency merely had written "same as other" to substantiate the medical items. When I asked Mrs. Hernandez what this phrase meant, she

Page 8 of 12 Pages                                                                  Initials

## AFFIDAVIT

told me that it meant the same medical information and documentation I had provided for my first claim August 7, 1996. To date I have received nothing on my first claim, no response from OWCP or the agency, or anything at all from anyone. Portion CA-20, the portion in question, is an integral part of CA-7, and when properly completed by the agency, results in a work schedule approved by OWCP which is based on the employee's injury and what the OWCP believes is the proper type and length of revised work for the employee. These alleged failures have caused a tremendous processing delay in receiving authorization for various medical procedures and the issuance of compensation payments by OWCP. Examples of procedures are the request for an MRI and EMG from Dr. Tijerina, the request for an EMG from Dr. Snyder, and the request from Dr. Mike Sweeney (Dr. Snyder's partner) for a thyroid injection – all forwarded to the agency, and denied. Interestingly, all of these requests were approved once Congressman Ortiz intervened on my behalf. This alleged failure on management's part affected payment of compensation from OWCP, a delay in surgery on my right shoulder, and a delay in getting an MRI (the latter two further causing a delay in my recovery from both procedures) - all because management failed to correctly process my claim. An example of this poor processing is OWCP's notification to the agency that the agency had failed to submit a totally complete claim. More specific examples of dates when crucial events occurred are

Page _9_ of _12_ Pages                                    ~~~ Initials

## AFFIDAVIT

as follows: On August 26, 1997 Dr. Sweeney requested OWCP approval to perform right shoulder surgery; OWCP did not approve the surgery until June 9, 1998. On November 3, 1998 Dr Tijerina requested OWCP approval to perform a post-surgery MRI for the purpose of evaluating me for duty status; OWCP did not approve request until August, 1999, the same month in which the MRI was finally performed. After necessary visits to and consultations with physicians, I was finally evaluated March, 2000, and as a result, finally cleared to return to work in a limited duty status. For this myriad of events, non-action, and delay after delay – which as I have said further caused delays in my receiving compensation payments and light-duty status, plus loss of wages – I blame the same three management officials already identified.

I seek the following relief:

1) Compensation from August 1, 1996 to the present, with consideration of all automatic grade-level increases, as well as step increases. My calculations without interest are estimated at an amount of $130,000.

2) All annual and sick leave, as well as advanced annual and sick leave which has been lost due to the injury suffered June 15, 1994

3) Placement in a position of equal pay consistent with my abilities and limitations as authorized by my treating physician(s)

4) No further retaliation by my employer as a result of this matter

Page _10_ of _12_ Pages                                                                    _mB_ Initials

## AFFIDAVIT

5) Compensatory damages for mental anguish in the amount of $150,000

6) Principal and interest I have withdrawn from my mutual fund investment account

7) Attorney fees and expenses

I have no witnesses I want interviewed in conjunction with my affidavit.

I have nothing else to add to my affidavit.

Page 11 of 12 Pages                                          Initials

Exhibit F

I have read the above statement consisting of /2 pages and it is true and correct to the best of my knowledge and recollection. I have been given an opportunity to review the statement and make change any changes, corrections, additions, or deletions. I have initialed each page and signed the statement below.

I declare, certify, verify, or state under penalty of perjury that the foregoing is true and correct. Executed on ___09-27-2000___.
(Date)

___Manuel Perez___ (Signature of Affiant)

SUBSCRIBED AND SWORN BEFORE ME AT:

___Brownsville, Cameron, Texas___ ON THIS _27th_ DAY OF _September_ 2000
(City, County, State)

LINDA HECKMAN
Notary Public, State of Texas
My Commission Expires 07-17-2004

___Linda Heckman___
Notary    (Witness)

Page _12_ of _12_ Pages                    ___MP___ Initials

Exhibit F

## PRIVACY ACT NOTICE TO COMPLAINANT
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to *INS* activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.

_____
Signature of Interviewer

_____
Signature of Complainant

Date: 9-27-2000

Place: Brownsville Texas

Exhibit F

Page 13 of 13