UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MANUEL PEREZ, JR., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-03-140 |
| | § | |
| JOHN ASHCROFT, Attorney General | § | |
| Of the United States and | § | |
| TOM RIDGE, Secretary of the United | § | |
| States Department of Homeland | § | |
| Security | § | |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS RESPONSE TO DEFENDANTS'
MOTION TO DISMISS AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants herein have moved for a dismissal of Plaintiff's lawsuit on the ground that it fails to state a claim upon which relief can be granted. See, Rule 12(b)(6) of the FRCP. Alternatively, the Defendants have moved for summary judgment on the basis that they are entitled to judgment as a matter of law. See, Rule 56(b) of the FRCP. This memorandum and referenced exhibits are submitted in support of Plaintiff's Response to Defendants' Motion to Dismiss and Alternative Motion for Summary Judgment.

1. Factual Background

   *Plaintiff either adopts Defendants' recitation of the facts as presented in their motion or offers his verified, controverting allegations of facts as emphasized in bold italics.*

   Plaintiff, Manuel Perez, began working as a Detention Officer for the Immigration and Naturalization Service – formerly an agency of the United States Department of Justice – in April 1988. See *Plaintiff's Complaint*, ¶6. In June of 1994, Plaintiff sustained injuries during a training exercise for which Plaintiff was placed on medical leave.[1] *Id. At ¶8. **Plaintiff's training class for use of the PR-24 side-handle baton was populated entirely by detention officers with disabilities who were instructed to participate in the training or look for another job.** See **Plaintiff's Exhibit A, Plaintiff's Deposition, pages 8-20.** The Plaintiff received a worker's compensation claim number and authorization for an examination by agency physicians approximately thirty days following his injury. See Defendants' Exhibits A and B. **However, the MRI recommended by the agency physicians was not authorized for almost two years, and the agency physicians eventually determined Plaintiff's injuries were outside the scope of their expertise.** See Defendants' Exhibit F at p. 4. **This entitled the Plaintiff to receive 75% of his base pay as workers' compensation, but he did not receive the benefit.*

   In August 1996, the Plaintiff went on "Leave Without Pay Status" (LWOP) because he was unable to "perform any of this duties at all due to the increased severity

   ---
   [1] This incident should not be confused with another on the job injury Plaintiff received in 1991. Plaintiff was guarding aliens on a Continental Airlines flight out of Harlingen, Texas. During the course of the flight, heavy turbulence was encountered resulting in Plaintiff being injured. As a result of the injuries sustained in this 1991 incident, Plaintiff had been assigned to light duty status at the time of the 1994 training incident referenced in Plaintiff's complaint. See Defendants' Exhibit C.

of his pain." *Defendants' Exhibit F at p. 4.*

In October 1996, the Plaintiff attempted to return to work claiming that his doctor said he could "work on light duty status." *Plaintiff's Complaint, ¶9.* Defendants allege Administrative Officer, Jan Hernandez, advised Plaintiff that the medical documentation he submitted did not provide sufficient information for which defendants could determine a "light duty" status position. **Plaintiff avers that his superiors actually told him the only way he could continue his salary was by returning to normal work status.** *Defendants' Exhibits D at p.3 and F at p. 4. Plaintiff's Exhibit A at pp. 19-20.*

Administrative Officer Hernandez indicated that the agency needed the Plaintiff's doctor to provide: (1) his diagnosis, (2) his plan of treatment, (3) his prognosis concerning the Plaintiff's condition, and (4) statement that described the restrictions or limitations in connection with the patient's work (*i.e.* patient can not lift items more than twenty pounds for at least three weeks; patient should not be required to stand more than "X" amount of minutes at a time without a break; etc.). *Defendants' Exhibit D at p.*

3.

Defendants allege in their memorandum that although Plaintiff forwarded copies of various medical reports from his different treating physicians, it was not until March of 2000, that Plaintiff finally submitted the medical reports that provided the information requested by the Defendants. *Defendants' Exhibits D and E.* **Contrary to this allegation, it is clear that Plaintiff provided sufficient medical reports responsive to the request soon after his request to return to light duty work.** *See Plaintiff's Exhibits B and C. His treating physician provided his diagnosis and light duty work restrictions, (See Plaintiff's Exhibit B at p. 2) while his*

physical therapy treatment was reported with good to excellent results. See Plaintiff's Exhibit C at pp. 1, 18, 22 and 26. This is corroborated by Dr. Michael Sweeney's report of February 8, 1998 setting out Plaintiff's period of partial disability from November 26 to present. See Plaintiff's Exhibit D.

It was during this period from October, 1996 through March 2000, in the Spring of 1997, that Plaintiff learned he was a candidate for surgery on his shoulder. Administrative Officer Hernandez confirmed Plaintiff was having difficulty obtaining authorization for the surgery. See Defendants' Exhibit D at p. 5. Plaintiff underwent his surgery on July 14, 1998. See Defendants Exhibit F at p. 7.

Defendants' allege that

in October 2001, Plaintiff was informed by his supervisor that he was going to be re-assigned to another light duty status job at the Port Isabel facility. Defendants' Exhibit G at pp. 2-3. Plaintiff indicated that he believed the position to be too strenuous on his back and he refused to go to his new assignment. Instead, Plaintiff demanded that he be allowed to work a different position Defendants' Exhibit G. Plaintiff's supervisor's [sic] refused; Plaintiff resigned after he was advised by supervisors that he would not be authorized leave if he left work early. Id.

Plaintiff contends he was ordered to report to a new post assignment which was not what his doctors and the agency had agreed upon pertaining to his accommodations. The new post was key control officer. See Plaintiff's Exhibit E. This post consists of many duties beyond his accommodations. He was then ordered to report as a lobby officer which is an armed post, and he advised his supervisor he had no weapon to cover the post. He requested a job description for the new post and annual leave, sick leave, or leave without pay so that he could consult with his physicians as to the accommodations needed to

perform either of the new post assignments. *He was denied leave and threatened with disciplinary action for abandoning his post and refusing orders which are immediate grounds for termination.* He voluntarily terminated his service in order to preserve his clean record. It is for this October 2001 incident that Plaintiff brought his informal discrimination claim that was settled at a mediation.

2. <u>Argument</u>

   A. <u>The Settlement Agreement executed by the parties on September 13, 2002, applies only to the discrimination complaint brought by Plaintiff as a result of the removal by Defendants of his accommodations on October 22, 2001.</u>

   The settlement document is clear that it applies to the "disputed issues in this matter." Defendants' Exhibit I at p. 1. The EEO Counselor Report, setting out the chronology of the informal claim, at page 4 of Defendants' Exhibit I, also states clearly that the event of discrimination occurred on October 22, 2001. It is also clear this informal complaint was initiated by Plaintiff in November of 2001, mere days after the incident, rather than several months later as alleged by Defendants in their motion. *Id.*

   Plaintiff has pursued separate incidents of discrimination by different means. Settlement of the October 22, 2001 incident has no bearing on the prior claim pursued through this action.

   B. <u>Plaintiff, as the nonmoving party, can meet his burden to demonstrate the existence of a genuine issue of material fact.</u>

   Evidence sufficient to meet the burden was produced in Plaintiff's responses to Defendants' discovery requests and is attached as Plaintiff's Exhibits B, C and D. Defendants do not dispute that Plaintiff had a disability as defined under the Rehabilitation Act. In addition, Defendants do not dispute that they were on notice that

---

Plaintiff had a disability or that Plaintiff requested a light duty assignment in October 1996. And finally, Defendants do not dispute that they denied Plaintiff's request to return to work in October 1996 at a light duty assignment.

Defendants argue that, in accordance with agency policy, Plaintiff was requested to produce "necessary medical documentation" that provided "the nature of the injury, the results of examination by proper medical authorities, prognosis, any resulting job limitations, and the like." See Defendants' Exhibit D. Defendants further argue that, "regardless of the large volume of documents Plaintiff produced from 1996 to March 2000, examination of these documents clearly indicate that these factors were never clearly set forth until March of 2000. See Defendants' Exhibit E." Plaintiff's Exhibits B and C clearly refute this conclusion by Defendants and present an obvious genuine issue of material fact. The medical records demonstrate his improvement through physical therapy and the detailed description of his possible light work duties, all within days of his request to return to a light duty assignment. His partial disability during this period is further corroborated by Plaintiff's Exhibit D.

Defendants are correct when they state that "the determination of a reasonable accommodation is a cooperative process in which both the employer and the employee must make reasonable efforts and exercise good faith." *Feliberty v. Kember Corp.*, 98 F.3d 274, 280 (7th Cir. 1996). In the case at bar, the defendants responded to Plaintiff's request and advised him in October 1996 that he did not have sufficient medical documentation for defendants to comply with his request for light duty. It became the Plaintiff's burden to present documentation supporting his request. Plaintiff met that burden and his request for accommodation was, and continues to be, blatently ignored

by Defendants constituting an act of discrimination in violation of law.

3. **Conclusion**

Defendants' Motion to Dismiss and Alternative Motion for Summary Judgment should be denied.

Respectfully submitted,

T. Mark Blakemore
Attorney, Counselor and Mediator
835 E. Levee Street, Sixth Floor
Brownsville, Texas 78520-5101
(956) 541-5900 ● (956) 541-5905/fax
Email: tmblakemore@tmb-atty.com

By: *T. Mark Blakemore* (signature)
T. Mark Blakemore
Federal ID No. 1915
State Bar No. 02431800

**Attorney for MANUEL PEREZ, JR.**

**CERTIFICATE OF SERVICE**

I certify that a copy of the true and foregoing Plaintiff's Memorandum In Support Of His Response To Defendants' Motion To Dismiss And Alternative Motion For Summary Judgment was mailed via certified mail, return receipt requested to Defendants' Attorney of Record as follows:

CMRR#7004 0750 0001 8480 5296
Michael T. Shelby
United States Attorney
Attn: Civil Docketing Clerk
PO Box 61129
Houston, TX 77208

CMRR#7004 0750 0001 8480 5326
Nancy L. Masso
Assistant United States Attorney
600 East Harrison St., No. 201
Brownsville, TX 78520

Dated: January 25, 2005

*T. Mark Blakemore* (signature)
T. Mark Blakemore

**AFFIDAVIT**

THE STATE OF TEXAS § § §
COUNTY OF CAMERON §

BEFORE ME, the undersigned authority, on this day personally appeared MANUEL PEREZ, JR., who by me being duly sworn on his oath deposed and says:

My name is MANUEL PEREZ, JR., and I am the Plaintiff in the above styled and numbered cause; that I have, read the above and foregoing Plaintiff's Memorandum In Support Of His Response To Defendants' Motion To Dismiss & Alternative Motion For Summary Judgment; and that every statement contained therein is within my knowledge and is true and correct.

FURTHER AFFIANT SAITH NOT.

_____
MANUEL PEREZ, JR.

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 24th day of January, 2005, A.D. to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC, STATE OF TEXAS

[Notary Seal: VIRGINIA P. GIL, Notary Public, State of Texas, My Commission Expires 11-05-2005]